UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) DOCKET NO. 5:22-cr-00018 |
| | ) |
| ERIC RAYMOND | ) |

**MOTION TO SUPPRESS EVIDENCE FROM
361 NORTH ROVERT STREET SEARCH WARRANT and MOTION FOR A
FRANKS HEARING**

NOW COMES the Defendant, by and through his attorney, Robert S. Behrens, and requests this Court Suppress the evidence obtained as a result of a search warrant dated 02/02/2022 for a house located at 361 North River Street in Swanton, Vermont where the evidence was obtained in violation of Defendant's Fourth Amendment rights. Defendant also requests a Frank's hearing.

**A. Facts**

The Government obtained a search warrant for 361 North River Street. (See 02/02/2022 Search Warrant Application with Affidavit attached hereto as Exhibit 1). The search warrant was not based on sufficient probable cause to search and all evidence obtained as a result of the warrant must be suppressed. Defendant has standing to challenge this warrant where he had a reasonable expectation of privacy in the house since that is where he resided.

The affidavit outlines the facts of a homicide that occurred at approximately 4:00 am on 2/2/22 at a house located at 45 Elm Street, Swanton. The affidavit indicates that three of the residents left the house after the incident – Jesse Sweet, Siobhan Loyer and

Gary Campbell. The affidavit does not indicate when these three residents left the scene. More importantly, of the residents who remained at the house and were interviewed by police, none indicated the Jesse Sweet, Siobhan Loyer or Gary Campbell were involved in the homicide. Although one witness said the deceased person was a "friend' of Gary Campbell – this statement does not implicate Gary Campbell in any crime. Further, according to the affidavit, the statement is not credible.

> Elvin said the night before Gary advised that a friend was coming over. Elvin said he never saw the person until he saw him dead upstairs…He believed Gary has something to do with this but couldn't say what happened. Elvin said that Gary was into drugs but had never seen him do drugs inside the house (Paragraph 19).

One has to speculate how Elvin would know the deceased was Gary's friend without ever having met him (deceased) or Gary admitting as much. While continuing to investigate, the police became concerned that Siobhan Loyer was being held hostage by Jesse Sweet.[1] However, according to the police and their own affidavit, this turned out not to be the case. When Siobhan was contacted by her brother – she provided:

> On February 2 2022 Detective Michael DeFonie spoke with Loyer's brother Michael Kirby who advised that he spoke with his sister Siobhan Loyer on FaceBook. Kirby advised his sister stated that she was with Jesse Sweet at an undisclosed location in Swanton and that Sweet had a firearm.

Ms. Loyer does not indicate she is in danger or is being held hostage or that she, Jesse or Gary committed any crime. She does say Jesse Sweet has a gun – however there is no evidence in the affidavit that Mr. Sweet was not allowed to have a gun or that this gun was

---

1 The police then investigated Ms. Loyer's whereabouts based on cell tower information off her phone and determined that one possible location was 361 North River Street. (Why the police stated this location in the affidavit is unclear since presumably there are many houses within the same radius of the cell tower used by the police).

used in any crime. Next, law enforcement received two anonymous tips that that people that presumably were at 45 Elm Steet (place of homicide) were now at 361 North Street and that Jesse Sweet shot the victim. (See paragraph 25.)

> On February 2 2022 law enforcement received an anonymous tip that stated "the people that live there is now 361 N River St Swanton, VT. Law enforcement received another tip that stated, "I heard it was dispute over drugs…the offered Jesse… shot his "Plug" (The victim)"

As the police continued to investigate throughout the day, they next surveilled 361 North River Street where there was evidence that the three witnesses - Jesse Sweet, Siobhan Loyer and Gary Campbell – were staying.

> Members of the Northern Vermont Drug Task Force NVDTF conducted surveillance throughout the day on February 2 2022. NVDTF members advised numerous vehicles have come and gone from the residence. NVDTF members also observed a dark color Volvo with a temporary registration placard similar in description to the vehicle believed to be operated by Jesse Sweet that remained at the residence throughout the day. Members of the NVDTF advised that multiple male individuals were seen leaving the house entering vehicles and loading an ATV trailer in the back yard.

The affidavit confirms Jesse Sweet may have been present at the house and that people loaded an AVT trailer in the back yard. The affidavit does not indicate what was loaded on the trailer nor does it specify any activity beyond normal every day comings and goings. At 1530 hours (3:330 pm), the police approached, located and detained Siobhan Loyer and Jesse Sweet. The officers did not locate Gary Campbell. The officers seized the premises and applied for a search warrant on the house.

**Legal argument**

A. Lack of probable cause

The affidavit was facially insufficient to support a finding of probable cause. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. Id. at 239.

Here, a homicide occurred at 45 First Street in Swanton, VT. The three witnesses who left the scene of the homicide went to 361 North River Street. The police clearly felt the three witnesses may have information pertaining to the homicide. The police reasonably located two of three witnesses and presumably interviewed them. However, once the police detained the witnesses, there were no grounds to seize the house and apply for a search warrant. There is no dispute that at the time of the seizure the police did not have any information Misty Morin or Eric Raymond had anything to do with the homicide. Secondly, once the police detained Siobahn Loyer and Jesse Sweet – the affidavit does not outline what evidence was seized from them. The affidavit requires the reader to presume the gun referenced in paragraph 23 was not on Mr. Sweet or in police custody at that time.

Moreover, even if the Court finds there was a probability the gun referenced in paraph 23 would be found in the house, there is no nexus between the gun and the

homicide. There affidavit supplies no information that a gun used in the homicide was at 361 North Street or that the gun (referenced in paragraph 23) was used in any crime.

The only probability established in the affidavit was that three potential witnesses - Jesse Sweet, Siobhan Loyer and Gary Campbell - were at 361 North River Street for a short period of time. Once two of the three were detained, the affidavit indicated the possibility that Gary Campbell was still in the house. However, to find Mr. Campbell the police could have moved for an arrest warrant instead of seizing and searching an entire residence. There was insufficient information contained in the affidavit for a judge to find that there was a fair probability that evidence of a crime, including murder, would be found at 361 North River Street.[2]

### B. Exclusionary Rule is Applicable

Exclusion of any and all evidence seized by the Government as a result of the 2/2/22 warrant is the only remedy where 1) the affidavit is so lacking in probable cause that no agent/officer could reasonably rely on it, 2) the affidavit was so deficient that the executing officers could not have presumed it to be valid, and 3) the magistrate issuing the warrant was misled by information in the affidavit. Where an affidavit is "so lacking in

---

[2] The Government may argue that Jesse may have shot the victim based on an anonymous tip. However, this is a non-credible hearsay statement without corroboration and cannot be relied upon. See U.S. v. Canfield, 212 F.3d 713 (2nd Cir. 1999) ("Although discredited as a rigid two-pronged test, an informant's basis of knowledge and veracity remain important factors in a 'totality of the circumstances' analysis.") Although the informant accurately states Mr. Sweet was at 361 North Street address, it is a far cry from the relying on a follow up statement that he murdered someone without more corroborating details.

indicia of probable cause as to render official belief in its existence entirely unreasonable", an officer cannot act on the warrant in objectively reasonable good faith. See United States v. Leon, 468 U.S. 897, 924 (1984).

Here, the affidavit is so lacking in any indicia of probable cause to search Raymond's residence that the officers cannot rely on the warrant in good faith. The police affidavit does not provide enough information that there was a fair probability that Mr. Raymond's residence would contain evidence of a crime let alone murder.

    C. Franks issue

The affidavit was also misleading. "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 104 S.Ct. 3405, _, 468 U.S. 897, 923, 82 L.Ed.2d 677, _ (1984). The affidavit was misleading became it falsely stated that Gary Campbell was still possibly in the house arguably providing more of a reason to search the premises. (See paragraph 28). However, a report by an unknown police officer who was involved in the seizure of 361 North Street states that all occupants of the house were detained and accounted for before the search occurred. (See Exhibit 2).

> After uniformed Law Enforcement personnel secured the front of the target residence, they made contact with all parties inside the target residence. They located and detained a total of 6 adults and two juveniles.

"'Where a defendant makes a preliminary showing that the government's affidavit misstated or omitted material information, Franks instructs a district court to hold a hearing to determine' whether the alleged misstatements or omissions in the warrant or wiretap application were made intentionally or with 'reckless disregard for the truth' and, if so, whether any such misstatements or omissions were 'material.'" United States v. Rajaratnam, 719 F.3d 139 (2nd Cir. 2013) "'[T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.'" Id. "To determine whether misstatements are 'material,' a court must 'set[ ] aside the falsehoods' in the application, *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir.2005), and determine '[w]hether the untainted portions [of the application] suffice to support a probable cause [or necessity] finding,' *United States v. Nanni*, 59 F.3d 1425, 1433 (2d Cir.1995). If the untainted portions of the application are sufficient to support the probable cause or necessity findings, then the misstatements are not 'material' and suppression is not required." Id.

Because the affidavit failed to disclose all the information necessary to the Court regarding the truth of whether or not Gary Campbell was in the residence, the Court could not properly find probable cause. Here, the affidavit was erroneous and at best was a reckless disregard of the truth. Secondly the misstatement was material. Here, if one

corrects the misstatement - ie Gary Campbell was not in the house - then there is less of a probability of evidence existing in the house and less of a need to seize the house and search it.

WHEREFORE, for the foregoing reasons, Defendant requests this Court suppress any and all evidence seized as a result of the 02/02/22 warrant, including 1) all guns and ammunition, 2) cell phone evidence and 3) any statements by Defendant and 4) evidence seized as a result of reliance on evidence seized in this warrant, as fruit of the poisonous tree. See <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963).

DATED at Burlington, Vermont, this 26th day of May, 2022.

                                              ERIC RAYMOND

                                              By: */s/ Robert S. Behrens*
                                                  Robert Behrens, his attorney